No. 24-1025

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

JOSHUA SIMON, DAVID BARBER, AND JOSUE BONILLA,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED, DIANA BLOCK AN INDIVIDUAL AND COMMUNITY
RESOURCE INITIATIVE, AN ORGANIZATION,

*Plaintiffs-Appellees*

v.

CITY AND COUNTY OF SAN FRANCISCO, PAUL MIYAMOTO, IN HIS
OFFICIAL CAPACITY AS SAN FRANCISCO SHERIFF,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of California
No. 4:22-cv-05541 JST
Hon. Jon S. Tigar

_____

## APPELLANTS' REPLY BRIEF
## (PRELIMINARY INJUNCTION APPEAL)

_____

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
JENNIFER E. CHOI
Chief Trial Deputy
ALEXANDER J. HOLTZMAN
JOSE A. ZELIDON-ZEPEDA
STEVEN F. EGLER
Deputy City Attorneys

Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
(415) 554-3999 [Holtzman]
(415) 355-3312 [Zelidon-Zepeda]
(415) 554-3975 [Egler]
alexander.holtzman@sfcityatty.org
jose.zelidon-zepeda@sfcityatty.org
steven.egler@sfcityatty.org

*Attorneys for Defendants-Appellants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ ii

INTRODUCTION ......................................................................... 1

BACKGROUND ........................................................................... 2

STANDARD OF REVIEW ............................................................. 3

ARGUMENT ............................................................................... 4

    I.     Plaintiffs Sued the Wrong Defendants in the Wrong Forum. .............. 4

    II.    The Superior Court Enters a Valid Order Allowing Sharing of
              Location Information ................................................................... 8

    III.   Plaintiffs Are Unlikely to Prevail on Their Substantive Claims. ........ 11

          A.    Plaintiffs Have Not Shown a Separation of Powers
                  Violation ...................................................................... 11

          B.    Plaintiffs Have Not Shown a Fourth Amendment
                  Violation ...................................................................... 13

                  1.    Plaintiffs Have Sharply Reduced Privacy Interests ........ 13

                  2.    Strong Government Interests Favor Allowing
                        Sharing of Location Information with Law
                        Enforcement ................................................................... 20

                  3.    Location Information Sharing is Independently
                        Supported by a Special Needs Analysis. ....................... 23

          C.    Plaintiffs Have Not Shown a Violation of the California
                    Right to Privacy. ........................................................... 24

    IV.   Plaintiffs Have Not Demonstrated They Face Irreparable Harm ........ 27

    V.    The Balance of the Equities and Public Interest Favor the
              Sheriff. ................................................................................... 29

CONCLUSION ............................................................................ 30

CERTIFICATE OF SERVICE ......................................................... 33

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arevalo v. Hennessy*
  882 F.3d 763 (9th Cir. 2018) (en banc) ..................................................6

*Beacon Theatres, Inc. v. Westover*
  359 U.S. 500 (1959) ...................................................................28

*Beautiful Struggle v. Baltimore Police Dep't*
  2 F.4th 330 (4th Cir. 2021) ..........................................................19

*Betschart v. Oregon*, --- F.4th ---
  2024 WL 2790334 (9th Cir. 2024) .......................................................5

*Brigham City, Utah v. Stuart*
  547 U.S. 398 (2006) ...................................................................22

*Carmel Valley Fire Prot. Dist. v. State*
  20 P.3d 533 (Cal. 2001) ...............................................................11

*Carpenter v. United States*
  585 U.S. 296 (2018) .......................................................... 20, 24, 25

*City of Los Angeles v. Lyons*
  461 U.S. 95 (1983) ....................................................................29

*Clark v. Coye*
  60 F.3d 600 (9th Cir. 1995) ............................................................5

*Clem v. Lomeli*
  566 F.3d 1177 (9th Cir. 2009) ........................................................28

*Columbia Basin Apartment Ass'n v. City of Pasco*
  268 F.3d 791 (9th Cir. 2001) ...........................................................7

*Dahl v. HEM Pharms. Corp.*
  7 F.3d 1399 (9th Cir. 1993) ..........................................................30

*Daves v. Dallas County*
  64 F.4th 616 (5th Cir. 2023) (en banc) .................................................5

*Davis v. United States*
  564 U.S. 229 (2011) ...................................................................10

*Dowden v. City of Sacramento*
   40 F. Supp. 2d 1146 (E.D. Cal. 1999) ...................................................7

*Drakes Bay Oyster Co. v. Jewell*
   747 F.3d 1073 (9th Cir. 2014) ...........................................................30

*Duncan v. Bonta*
   83 F.4th 803 (9th Cir. 2023) (en banc)...............................................30

*Eccles v. Peoples Bank of Lakewood Vill.*
   333 U.S. 426 (1948) ..........................................................................27

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*
   82 F.4th 664 (9th Cir. 2023) (en banc)..................................................4

*Friedman v. Boucher*
   580 F.3d 847 (9th Cir. 2009) ..............................................................22

*Garcia v. Google, Inc.*
   786 F.3d 733 (9th Cir. 2015) (en banc)..............................................3, 4

*Goldie's Bookstore, Inc. v. Super. Ct.*
   739 F.2d 466 (9th Cir. 1984) ..............................................................27

*Goodman v. HTC Am., Inc.*
   2012 WL 2412070 (W.D. Wash. June 26, 2012)................................25

*Griffin v. Wisconsin*
   483 U.S. 868 (1987) ..........................................................................23

*Haskell v. Harris*
   745 F.3d 1269 (9th Cir. 2014) (en banc).................................... 15, 18

*Heien v. North Carolina*
   574 U.S. 54 (2014) ............................................................................10

*Hernandez v. Sessions*
   872 F.3d 976 (9th Cir. 2017) ................................................................4

*Hill v. NCAA*
   865 P.2d 633 (Cal. 1994)...................................................................25

*Hughey v. City of Hayward*
   30 Cal. Rptr. 2d 678 (Ct. App. 1994) ....................................................................9

*In re Brown*
   291 Cal. Rptr. 3d 461 (Ct. App. 2022) ..................................................................6

*In re Google Location Hist. Litig.*
   514 F. Supp. 3d 1147 (N.D. Cal. 2021) ...............................................................25

*In re Harris*
   287 Cal. Rptr. 3d 46 (Ct. App. 2021) ..................................................................29

*In re Heincy*
   858 F.2d 548 (9th 1988) .......................................................................................28

*In re Humphrey*
   482 P.3d 1008 (Cal. 2021) ............................................................ 1, 10, 13, 16, 18

*In re Marcus*
   41 Cal. Rptr. 3d 861 (Ct. App. 2006) ................................................................8, 9

*In re Marriage of Drake*
   62 Cal. Rptr. 2d 466 (Ct. App. 1997) ...............................................................8, 9

*In re Waer*
   Cal. S. Ct. No. S269188 .......................................................................................5

*In re York*
   892 P.2d 804 (Cal. 1995) ...................................................................... 13, 18, 25

*Jackson v. Thompson*
   110 P.2d 470 (Cal. 1941) .....................................................................................8

*Ketscher v. Super. Ct.*
   88 Cal. Rptr. 357 (Ct. App. 1970) ....................................................................8, 9

*Klein v. City of San Clemente*
   584 F.3d 1196 (9th Cir. 2009) ............................................................................27

*L.A. Cnty. Bar Ass'n v. Eu*
   979 F.2d 697 (9th Cir. 1992) ................................................................................5

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*
   535 U.S. 613 (2002) ........................................................................6

*Lewis v. Super. Ct.*
   397 P.3d 1011 (Cal. 2017)..............................................................27

*Little v. Super. Ct.*
   67 Cal. Rptr. 77 (Ct. App. 1968) .....................................................8

*Loder v. Mun. Ct.*
   553 P.2d 624 (Cal. 1976)................................................................27

*Maryland v. King*
   569 U.S. 435 (2013) ................................................................ 18, 19

*Miller v. Gammie*
   335 F.3d 889 (9th Cir. 2003) (en banc) ...........................................4

*Missouri v. McNeely*
   569 U.S. 141 (2013) .......................................................................22

*Norris v. Premier Integrity Sols., Inc.*
   641 F.3d 695 (6th Cir. 2011) ..........................................................17

*O'Shea v. Littleton*
   414 U.S. 488 (1974) ............................................................. 5, 7, 29

*Ohio Bureau of Emp. Servs. v. Hodory*
   431 U.S. 471 (1977) .........................................................................7

*Ohio Civ. Rts. Comm'n v. Dayton Christian Schs.*
   477 U.S. 619 (1986) .........................................................................7

*Paramount Land Co. LP v. Cal. Pistachio Comm'n*
   491 F.3d 1003 (9th Cir. 2007).........................................................27

*People v. Alvarez*
   316 Cal. Rptr. 3d 705 (Ct. App. 2023).............................................22

*People v. Barbero*
   2022 WL 5358642 (Cal. Ct. App. Oct. 6, 2022).............................22

*People v. Buza*
413 P.3d 1132 (Cal. 2018) ........................................................... 19, 26, 27

*People v. McInnis*
494 P.2d 690 (Cal. 1972) ....................................................................26

*People v. O'Neil*
81 Cal. Rptr. 3d 878 (Ct. App. 2008) ...............................................12

*People v. Rosas*
264 Cal. Rptr. 3d 43 (Ct. App. 2020) ...............................................10

*People v. Smith*
295 Cal. Rptr. 3d 182 (Ct. App. 2022) ..............................................12

*People v. Waer*
S.F. Super. Ct. No. 21001863 ..............................................................5

*Redd v. Guerrero*
84 F.4th 874 (9th Cir. 2023) .................................................................5

*Ryan v. State Bd. of Elections of State of Ill.*
661 F.2d 1130 (7th Cir. 1981) ..............................................................7

*Scilini v. Scilini*
3 P.2d 1020 (Cal. 1931) ........................................................................9

*Simmons v. Super. Ct.*
341 P.2d 13 (Cal. 1959) ........................................................................9

*Smith v. United States*
343 F.2d 539 (5th Cir. 1965) ................................................................7

*Stack v. Boyle*
342 U.S. 1 (1951) ..............................................................................6, 7

*Stanley v. U.S.C.*
13 F.3d 1313 (9th Cir. 1994) ..........................................................4, 28

*United States v. Alcala*
678 F.3d 574 (7th Cir. 2012) ..............................................................20

*United States v. Baker*
221 F.3d 438 (3d Cir. 2000) ................................................................. 15

*United States v. Barnett*
415 F.3d 690 (7th Cir. 2005) ............................................................... 17

*United States v. Chan-Jimenez*
125 F.3d 1324 (9th Cir. 1997) ............................................................. 14

*United States v. Elder*
805 F. App'x 19 (2d Cir. 2020) ........................................................... 15

*United States v. Gerrish*
96 F.4th 67 (1st Cir. 2024) .................................................................. 16

*United States v. Hammond*
996 F.3d 374 (7th Cir. 2021) ............................................................... 19

*United States v. Hasbajrami*
945 F.3d 641 (2d Cir. 2019) ................................................................ 19

*United States v. Hensley*
469 U.S. 221 (1985) ............................................................................ 21

*United States v. Jones*
565 U.S. 415 (2012) ..................................................................... 20, 25

*United States v. Knights*
534 U.S. 112 (2001) ............................................................... 13, 14, 15

*United States v. Lara*
815 F.3d 605 (9th Cir. 2016) ............................................................... 14

*United States v. Leon*
468 U.S. 897 (1984) ............................................................................ 10

*United States v. Pool*
621 F.3d 1213 (9th Cir. 2010), *vacated* 659 F.3d 761
(9th Cir. 2011) (en banc) .................................................................... 24

*United States v. Scott*
450 F.3d 863 (9th Cir. 2006) ............................................... 15, 16, 17, 23

*United States v. Stephens*
424 F.3d 876 (9th Cir. 2005) ..................................................................12

*United States v. Wiley*, ---F.4th ---
2024 WL 2745123 (9th Cir. 2024) .................................................. 13, 23

*United States v. Wilson*
13 F.4th 961 (9th Cir. 2021) ....................................................................19

*United States v. Yeary*
740 F.3d 569 (11th Cir. 2024) .................................................................17

*Vernonia Sch. Dist. 47J v. Acton*
515 U.S. 646 (1995) ................................................................................22

*Von Schmidt v. Widber*
34 P. 109 (Cal. 1893) ................................................................................8

*W. Greyhound Lines v. Super. Ct.*
331 P.2d 793 (Cal. Ct. App. 1958) ...........................................................9

*Zepeda v. U.S. I.N.S.*
753 F.2d 719 (9th Cir. 1983) ..................................................................10

**State Statutes & Codes**
Cal. Penal Code § 817(c) ........................................................................22

Cal. Penal Code § 1192.7(c)(31) .............................................................17

**Other Authorities**
S.F. Charter § 4.127 ................................................................................21

S.F. Charter § 6.105 ................................................................................21

7 Witkin, Cal. Proc. 6th Judgm. § 54 (2024) ...........................................8

## INTRODUCTION

In their Answering Brief, Plaintiffs concede key points about the factual record and the striking implications of the preliminary injunction.

Plaintiffs do not contest that the district court's injunction is unprecedented—the first injunction of its kind against a pretrial release program. Plaintiffs recognize that (1) the Superior Court advises criminal defendants that potential sharing of location information is a condition of their release; (2) defendants agree aloud, on the record to these conditions; (3) defendants sign the order acknowledging these conditions; (4) the Superior Court issues a minute order referring to conditions described on the record; and (5) defendants twice acknowledge the conditions at the Sheriff's office. Nor do Plaintiffs dispute that, in determining conditions of pretrial release, judges in California "undertake an individualized consideration of the relevant factors" and may order only the "least restrictive, nonmonetary conditions of release necessary." *In re Humphrey*, 482 P.3d 1008, 1015, 1019 (Cal. 2021).

Notwithstanding the Superior Court's orders authorizing sharing of PTEM Program participants' location for law enforcement purposes and participants' consent, the preliminary injunction order prohibits the Sheriff from sharing location information for Program participants with any other law enforcement agency, including the San Francisco Police Department. The Answering Brief goes

further, asserting the Sheriff is constitutionally required to accept new participants into the PTEM Program when it cannot share those individuals' location with other law enforcement agencies, even though the Sheriff has determined location information sharing is necessary for public safety, criminal defendants agreed to that sharing, and the Superior Court says the Sheriff can share that information.

The preliminary injunction offends separation of powers, comity, and federalism and threatens public safety and the success of PTEM Program participants. This Court should vacate the injunction as applied to individuals subject to specific orders and admonishments by the Superior Court about conditions of release.

## BACKGROUND

Throughout the Answering Brief, Plaintiffs refer to previous procedures the Superior Court used in placing criminal defendants on the PTEM Program. Ans. Br. 1, 6-10. But, Plaintiffs recognize (as they must) that these now-obsolete procedures are not germane to this appeal. *Id.* at 11. It is undisputed that the Superior Court now tells criminal defendants whose release it conditions on PTEM Program participation that their location information can be shared with other law enforcement agencies. *Id.* at 11. It is likewise undisputed that the EM Orders signed by defendants and minute orders incorporate the terms stated on the record. *Id.* at 9, 11.

With the essential facts undisputed, this appeal squarely raises the legal question whether the Sheriff must disregard conditions of release entered by the Superior Court. The district court implicitly recognized the problematic nature of instructing the Sheriff to disregard those orders when it allowed the Sheriff to continue to enforce warrantless search conditions entered by the Superior Court. 1-ER-49. But the district court erred by not recognizing the same problem when it enjoined the Sheriff from implementing Superior Court-ordered sharing of location information with other law enforcement agencies when necessary, such as locating a PTEM Program participant potentially committing crimes. *Id.*

## STANDARD OF REVIEW

The only respect in which Plaintiffs substantively disagree with the Sheriff's description of this Court's standard of review is to dispute that they seek a mandatory injunction. The Answering Brief belies Plaintiffs' assertion that they target a contested policy. They would not be satisfied if the Sheriff removed Rule 11 but continued to share location information with other law enforcement agencies. Instead, Plaintiffs want to overturn the Sheriff's longstanding ability to share location information and force the Sheriff to disregard the Superior Court's contrary instructions. A preliminary injunction that changes the status quo, rather than preserving it, is mandatory. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 n.4 (9th Cir. 2015) (en banc). The injunction here upends the status quo.

Plaintiffs cite *Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*, 82 F.4th 664 (9th Cir. 2023) (en banc), but that decision involved a specific, new policy rather than a longstanding practice like the Sheriff's. *Id.* at 684-85. Plaintiffs also rely on *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017), but *Hernandez* must be read consistently with *Garcia. See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). Because mandatory injunctions like this one *change* the status quo, they are "particularly disfavored," *Garcia*, 786 F.3d at 740, and will not issue "unless the facts and law clearly favor the moving party." *Stanley v. U.S.C.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (citation omitted).

## ARGUMENT

## I. Plaintiffs Sued the Wrong Defendants in the Wrong Forum.

Plaintiffs' lead arguments about the form and clarity of the Superior Court's orders, *see* Ans. Br. 22-29, accentuate the district court's error in failing to leave the issues Plaintiffs raise to their proper forum—the state criminal courts. Plaintiffs acknowledge they can only challenge implementation of the Superior Court's orders, not the orders themselves. *See* Ans. Br. 30 & n.8. In arguing they can proceed here, they shortchange the interests in deference to state court proceedings and naming the appropriate defendant.

As in *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974), Plaintiffs demand "nothing less than an ongoing federal audit of state criminal proceedings" to determine if the Superior Court has undertaken the appropriate individualized consideration. For example, Plaintiffs assert that the orders in cases including *People v. Waer*, S.F. Super. Ct. No. 21001863, are enforceable while orders in other cases are not. Ans. Br. 33 n.9.[1] Because Plaintiffs' arguments depend on looking behind Superior Court orders, they do not offer any "'bright-line finding' that [the Sheriff's] action is unlawful." *Redd v. Guerrero*, 84 F.4th 874, 887 (9th Cir. 2023) (citation omitted). Mediating the relationship between state court hearings and the Sheriff's implementation of orders "would entail heavy federal interference in such sensitive state activities as administration of the judicial system," which federal courts "should be very reluctant to grant." *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir. 1992).[2]

Plaintiffs do not address *Daves v. Dallas County*, 64 F.4th 616, 631 (5th Cir. 2023) (en banc), *cert. denied*, 144 S. Ct. 548 (2024), which held that a case about

---

[1] *Waer* exemplifies that defendants can challenge the conditions of release in the criminal court and habeas, distinguishing the circumstances here from *Betschart v. Oregon*, --- F.4th ---, 2024 WL 2790334 (9th Cir. 2024). *See In re Waer*, Cal. S. Ct. No. S269188.

[2] An injunction reaching beyond individual cases where the Superior Court did not provide individualized consideration would conflict with decisions addressing the scope of injunctive relief against state or local agencies. *See Clark v. Coye*, 60 F.3d 600, 604 (9th Cir. 1995).

pretrial bail determinations that, as here, included the county and sheriff as defendants, should not "have been adjudicated in federal court." Plaintiffs also ignore *Stack v. Boyle*, 342 U.S. 1, 7 (1951), which ordered dismissal of a federal habeas petition challenging bail as unconstitutionally set because an "adequate remedy available in the criminal proceeding ha[d] not been exhausted."

Plaintiffs concede they did not raise the pretrial release conditions with the state court. Ans. Br. 30. They needed to do so under *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (holding petitioner "properly exhausted his state remedies as to his bail hearing" having "filed two motions with the superior court, a habeas petition with the California Court of Appeal, and a petition for a writ of habeas corpus with the California Supreme Court"). California law likewise requires them to do so. *See In re Brown*, 291 Cal. Rptr. 3d 461, 465 (Ct. App. 2022) (holding "habeas corpus … is the appropriate vehicle for raising questions concerning the legality of a grant or denial of bail"), *review denied* (June 22, 2022).

Plaintiffs' waiver-by-removal arguments overlook that the Sheriff has consistently asserted that the state *criminal* courts should address any claims about the scope of their orders. *See* Ans. Br. 30-31. Given the Sheriff's uniform arguments, there was no waiver. The decisions Plaintiffs cite are not to the contrary. *See Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 624 (2002) (addressing waiver of Eleventh Amendment immunity); *Ohio Bureau of*

*Emp. Servs. v. Hodory*, 431 U.S. 471, 479 (1977) (involving state *opposed* to *Younger* abstention); *Ryan v. State Bd. of Elections of State of Ill.*, 661 F.2d 1130, 1136 (7th Cir. 1981) (same). Even assuming decisions on *Younger* abstention apply to limitations on intervention under *Littleton* and *Stack*, "a state does not waive the comity and federalism interests undergirding *Younger* by invoking the jurisdiction of the federal courts." *Dowden v. City of Sacramento*, 40 F. Supp. 2d 1146, 1152 n.5 (E.D. Cal. 1999) (citing *Ohio Civ. Rts. Comm'n v. Dayton Christian Schs.*, 477 U.S. 619, 626 (1986)); *see Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 797, 800 (9th Cir. 2001) (no forfeiture of *Younger* abstention even after stipulation to stay state proceedings pending resolution of federal case).

The amicus brief on appeal submitted by Plaintiffs' criminal court attorneys at the Public Defender's Office accentuates the comity and federalism issues posed by Plaintiffs' arguments. The Public Defender is counsel to Plaintiffs and argues points that it should have raised in Plaintiffs' criminal cases. The Public Defender's submission of new Superior Court hearing transcripts (which is improper by an amicus, *see Smith v. United States*, 343 F.2d 539, 541 (5th Cir. 1965)) underscores that these issues are for the Superior Court. Because Plaintiffs' concerns should have been addressed to the criminal court, this Court should vacate the preliminary injunction.

## II.     The Superior Court Enters a Valid Order Allowing Sharing of Location Information.

Plaintiffs' attack on the form of Superior Court orders lacks merit. *See* Ans. Br. 23-29. The Superior Court issues *two* orders incorporating the conditions stated on the record, including the EM Order signed by criminal defendants to acknowledge their agreement. 2-ER-142 ("Upon questioning by the Court, they state that they have had an opportunity to consult with their counsel and that they accept the conditions set forth on the record."); 2-ER-144 (reflecting with signature that the "defendant has waived their 4th Amendment rights and understands the restrictions ordered and stated by the Court" and "agrees to enroll in the electronic monitoring program [and] follow the program rules"); 2-ER-68:25-26 ("Here's the form for you to sign. That just reflects what we just agreed.").

None of the decisions Plaintiffs cite holds that a court cannot incorporate conditions of release in written orders or minute orders. *See In re Marcus*, 41 Cal. Rptr. 3d 861, 866 (Ct. App. 2006) (recognizing minute order is order for purposes of contempt); *Ketscher v. Super. Ct.*, 88 Cal. Rptr. 357, 359 (Ct. App. 1970) (same); *Little v. Super. Ct.* 67 Cal. Rptr. 77, 81 (Ct. App. 1968) (same); 7 Witkin, Cal. Proc. 6th Judgm. § 54 (2024) (same); *see also Jackson v. Thompson*, 110 P.2d 470, 472 (Cal. 1941) (holding minute order triggers time for appeal); *Von Schmidt v. Widber*, 34 P. 109, 111 (Cal. 1893) (concluding written order did not also need to be recorded in minutes); *In re Marriage of Drake*, 62 Cal. Rptr. 2d

466, 486 (Ct. App. 1997) (involving expressly inconsistent oral and written orders). Here, a "written record … is made by the court." *Simmons v. Super. Ct.*, 341 P.2d 13, 17 (Cal. 1959). Because the Superior Court's admonitions are part of *both* the EM Order and minute order, Plaintiffs' arguments about when one order supersedes another are irrelevant. *See Scilini v. Scilini*, 3 P.2d 1020 (Cal. 1931) (involving inconsistent orders); *Marriage of Drake*, 62 Cal. Rptr. 2d at 486-87 (explaining oral orders were *not* entered in minutes); *Hughey v. City of Hayward*, 30 Cal. Rptr. 2d 678, 680 (Ct. App. 1994) (addressing time to appeal, not validity of order).

Nor do Plaintiffs identify any genuine uncertainty about the meaning of the Superior Court's admonitions. The cases Plaintiffs cite involved unclear orders in contempt proceedings or did not discuss the clarity of orders. *See Marcus*, 41 Cal. Rptr. 3d at 866 (describing multiple potential meanings from oral proceedings in context of contempt judgment); *Ketscher*, 88 Cal. Rptr. at 359 (same); *W. Greyhound Lines v. Super. Ct.*, 331 P.2d 793, 795 (Cal. Ct. App. 1958) (holding minute order constituted final judgment). If defendants have a question about the conditions of release, they can ask the court or their counsel to clarify.

Courts would be thrown into chaos if they could not refer in written orders to directions provided orally on the record. It is even more problematic to hold the Sheriff liable for relying on the Superior Court's admonitions. *See Heien v. North*

*Carolina*, 574 U.S. 54, 67 (2014) (cited by Plaintiffs but *rejecting* exclusion of evidence based on reasonable mistake of law); *Davis v. United States*, 564 U.S. 229, 241 (2011) (rejecting exclusion of evidence from search supported by then-binding precedent); *People v. Rosas*, 264 Cal. Rptr. 3d 43, 50 (Ct. App. 2020) (cited by Plaintiffs but addressing warrantless search *without* search condition). These decisions on exclusion of evidence make clear that law enforcement agencies may rely on courts' admonitions and orders. *See United States v. Leon*, 468 U.S. 897, 920 (1984).

Nor is there any support for the proposition that, by having rules for a pretrial release program for which he is responsible, the Sheriff prevents the Superior Court from fulfilling its constitutional duties. In California, courts enter only the "least restrictive, nonmonetary conditions of release necessary." *Humphrey*, 482 P.3d at 1015. The Superior Court does so with respect to the PTEM Program. 2-ER-178-79. The largely extra-record evidence Plaintiffs cite from a few hearings reflects the Superior Court properly determining release conditions.[3] *See* 2-ER-160:2-8 (rejecting defense counsel's proposal as insufficient); Plaintiffs' RJN, Ex. 2 at 4:23-28 (same); *id.*, Ex. 3 at 6:22-24 ("The

---

[3] This Court's review of a district court's preliminary injunction order is "restricted to the … record available to the district court when it granted or denied the injunction motion." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 724 (9th Cir. 1983).

alternatives I have before me are I can release him with a search condition. I can refer him to ICR."); *id.*, Ex. 4 at 5:16-17 ("I think it's the less restrictive alternative, right?"). These transcripts undermine Plaintiffs' untenable position that the Sheriff is incapacitated from setting conditions for the PTEM Program. *See id.*, Ex. 2 at 3:27-4:1 ("The Sheriff's Department is an independent department that has the authority to set their own rules for their program.").[4]

## III.   Plaintiffs Are Unlikely to Prevail on Their Substantive Claims.

### A.   Plaintiffs Have Not Shown a Separation of Powers Violation.

Plaintiffs' separation of powers claim fails based on the Superior Court's admonitions. Because "the three branches of government are interdependent," one branch can take actions that "'significantly affect those of another branch,'" but do not "defeat or materially impair" the other branch's powers. *Carmel Valley Fire Prot. Dist. v. State*, 20 P.3d 533, 538 (Cal. 2001) (citation omitted). Plaintiffs do not engage with the decisions cited in the Opening Brief addressing the executive's and judiciary's overlapping responsibilities in supervision. *Compare* Op. Br. 31-33, *with* Ans. Br. 34-36. And they do not contest that the preliminary injunction order ignored the Superior Court's admonitions and orders on location information sharing as to separation of powers. *See* Ans. Br. 34.

---

[4] Plaintiffs' aside about the scope of sharing, Ans. Br. 25 n.6, ignores the Sheriff's policy on that sharing, 2-ER-121.

The transcripts Plaintiffs attached to the Motion for Judicial Notice underscore the failure of this claim by showing the Superior Court's awareness of pretrial release options and recognition that the Sheriff is not under its jurisdiction. *See supra* at 10-11. Indeed, Plaintiffs' position would *create* a separation of powers conflict by requiring the Sheriff—an elected executive official taking responsibility for out-of-custody supervision of defendants—to operate the PTEM Program in a way he believes is unsafe.

None of the cases Plaintiffs cite found a separation of powers violation when, as here, the court determined a particular program was required for pretrial release. *See People v. Smith*, 295 Cal. Rptr. 3d 182, 187 (Ct. App. 2022) (holding "a court—not a probation officer—must make the decision to require a defendant to attend residential treatment," as the Superior Court here does with the PTEM Program); *see also United States v. Stephens*, 424 F.3d 876, 882 (9th Cir. 2005) (holding there was no federal separation of powers violation in probation officer selecting drug treatment program and the program determining the appropriate number of in-treatment drug tests); *People v. O'Neil*, 81 Cal. Rptr. 3d 878, 883 (Ct. App. 2008) (requiring only that "the court's order cannot be entirely open-ended"); *People v. Cervantes*, 201 Cal. Rptr. 187, 190 (Ct. App. 1984) (addressing "delegation of unlimited discretion to a probation officer" on restitution). Here, the Superior Court determines whether it is appropriate to condition a defendant's

release from custody on participation in the PTEM Program.[5] *See Humphrey*, 482 P.3d at 1020; *In re York*, 892 P.2d 804 (Cal. 1995). Especially given the court's express identification of the conditions, there is no separation of powers concern.

### B. Plaintiffs Have Not Shown a Fourth Amendment Violation.

"The touchstone of the Fourth Amendment is reasonableness." *United States v. Knights*, 534 U.S. 112, 118-20 (2001). It is unreasonable for Plaintiffs to assert that they can receive in-court admonitions about sharing of location information as a condition of release, agree to that condition, and then treat the admonition as a nullity. Based on both a balancing of privacy and government interests and a special needs analysis, sharing of location information with other law enforcement agencies complies with the Fourth Amendment.

### 1. Plaintiffs Have Sharply Reduced Privacy Interests.

Class members, while represented by counsel, affirm to the Superior Court that the Sheriff may share their location data as a condition of release from custody. *See* Ans. Br. 11; 2-ER-140; 2-ER-144; *United States v. Wiley*, --- F.4th --, 2024 WL 2745123, at *1 (9th Cir. 2024) ("The monitor … permitted Wiley to

---

[5] Plaintiffs make it seem as though the challenged conditions apply to all released defendants. See Ans. Br. 57 ("the Sheriff thus unilaterally imposes his surveillance conditions in every case"). To the contrary, the conditions apply to only a small proportion of defendants for which the Superior Court orders the PTEM Program's intensive supervision as an alternative to detention. 4-ER-581 ¶ 4.

avoid detention and tracked her location at all times."). This consent, at a minimum, "significantly diminish[es]" the defendants' reasonable expectations of privacy. *Knights*, 534 U.S. at 119-20 (leaving open whether consent alone is dispositive). Plaintiffs argue this consent is invalid. *See* Ans. Br. 37. But this argument disregards that the Superior Court's admonition encompasses the sharing Plaintiffs challenge. 2-ER-181. Plaintiffs fault the Superior Court's admonition for not stating that no warrant is required for sharing. Ans. Br. 41. But a Fourth Amendment waiver need not warn about warrantless searches. Given consent, such a caveat is superfluous. Plaintiffs rely on *United States v. Chan-Jimenez*, 125 F.3d 1324, 1328 (9th Cir. 1997), but that decision concerned non-verbal "obedience to a show of authority," whereas class members in court, orally and in writing, agree to the conditions they challenge. *See* 2-ER-68:3-17 (Simon transcript).

Plaintiffs also cite *United States v. Lara*, 815 F.3d 605, 610 (9th Cir. 2016), but that case involved a search that the court held exceeded the bounds of the search condition, while Plaintiffs seek to prevent *any* sharing of location information without a warrant. The Sheriff is not aware of authority, and Plaintiffs cite none, adopting Plaintiffs' view that supervision conditions must specify whether a request for information or sharing can occur without a warrant or particularized suspicion. *See* U.S. Sentencing Comm'n Guidelines Manual § 5D1.3(c)-(d) (2023) (stating conditions of supervision without specifying that

requests for and sharing of information by probation officer may be warrantless and without suspicion); *United States v. Baker*, 221 F.3d 438, 449 (3d Cir. 2000) (cited by Plaintiffs but applying Pennsylvania law, not Fourth Amendment, to determine what the court entering the condition believed it meant); *see also United States v. Elder*, 805 F. App'x 19, 22 (2d Cir. 2020) (cited by Plaintiffs but relying on state law and declining to decide whether Fourth Amendment violated because exclusion not warranted in any event).

Given their facial challenge, Plaintiffs must show that the sharing of location information is always unconstitutional. *Haskell v. Harris*, 745 F.3d 1269, 1271 (9th Cir. 2014) (en banc) (requiring plaintiff in facial challenge like this one to show intervention is appropriate for all members of the class). It is not. Any admonition will be subject to some ambiguity to which a defendant can potentially point, yet such waivers are routinely enforced. *See, e.g.*, *Knights*, 534 U.S. at 119. In any event, the Sheriff should not be held liable for uncertainty about the scope of the waiver entered by the Superior Court in a counseled hearing. The meaning of the admonition is that the Sheriff may voluntarily share PTEM Program participants' location information with other law enforcement.

Plaintiffs also attack the Superior Court's admonition under the unconstitutional conditions doctrine, relying on *United States v. Scott*, 450 F.3d 863 (9th Cir. 2006). Ans. Br. 38-40. But as the Opening Brief explains, without

meaningful response from Plaintiffs, the holding in *Scott* does not apply here. *Scott* held that the need for a Fourth Amendment waiver pretrial must be individualized, as it is when Superior Court judges make the pretrial release determinations. *See Scott*, 450 F.3d at 872 & n.12. In *Scott*, the drug testing condition was imposed without findings about the defendant. *Id.* at 865, 874. Here, the Superior Court determines whether PTEM Program conditions are necessary for release from custody at an evidentiary hearing. *See* 4-ER-566-79 (Bonilla transcript). Whereas *Scott* found the challenged condition was unrelated to public safety or appearance in court, the conditions here further the purposes for pretrial release conditions. *See Scott*, 450 F.3d at 869-72. In addition, *Scott* involved a search condition challenged in the proper proceeding: a criminal case based on evidence from a search, not a civil case against the agency supervising the defendant.

Uniform precedent outside the Ninth Circuit enforces criminal defendants' waivers in this context. Plaintiffs engage with some of this authority in a footnote, but their attempted distinctions fail. Plaintiffs purport to distinguish *United States v. Gerrish*, 96 F.4th 67 (1st Cir. 2024), based on a requirement in Maine, which imposed the search condition at issue, to release pretrial defendants subject to the least restrictive conditions sufficient to ensure public safety. *See* Ans. Br. 38 n.12. But that aligns with the standard applied by California judges. *Compare Gerrish*, 96 F.4th at 69, *with Humphrey*, 482 P.3d at 1015, 1019. While Plaintiffs assert that

*Norris v. Premier Integrity Solutions, Inc.*, 641 F.3d 695 (6th Cir. 2011), analyzed reasonableness separate from the waiver, *Norris* instead held the defendant had a "significantly reduced expectation of privacy *because* he was on pre-trial release awaiting criminal prosecution and, *as a condition of such release, had agreed* that he would undergo drug testing." *Id.* at 700-01 (emphasis added).

Plaintiffs also misconstrue *United States v. Yeary*, 740 F.3d 569, 583 (11th Cir. 2024), which held that consent to pretrial release conditions merely to a law enforcement agency was enforceable. *Yeary* did not reweigh the reasonableness of the search condition beyond recognizing that, as here, the criminal defendant "was not entitled to release on bail" absent agreement to "terms outlined in the [supervision agency's] agreement." *Id.* at 582-83. Plaintiffs do not engage with *United States v. Barnett*, 415 F.3d 690 (7th Cir. 2005). Finally, they do not address that individuals may waive their Fourth Amendment rights with far fewer protections than exist here. Op. Br. 37-38 (citing cases ignored by Plaintiffs). These decisions support not expanding *Scott* to the circumstances here, where a court makes findings based on clear and convincing evidence in a counseled hearing and states conditions of release to which the criminal defendant agrees.

Plaintiffs' and class members' serious felony charges further reduce their reasonable expectations of privacy. *See* Cal. Penal Code §§ 1192.7(c)(31), 1270.1(a). Plaintiffs exemplify the need for sharing location information given

Simon's and Bonilla's repeated alleged assaults, Barber's residence in Fremont, and Plaintiffs' repeated violations. 2-ER-112 ¶ 6 (describing Simon's new charges); 4-ER-558 (ordering Barber's home detention in Fremont); 4-ER-606 (stay-away order violation); 4-ER-605 (violation for leaving 50-mile radius). *York* rejected "the flawed premise that a defendant who seeks OR release has the same reasonable expectation of privacy as that enjoyed by persons not charged with any crime." 892 P.2d at 813. Plaintiffs and class members have no right to release from custody without participating in the PTEM Program.[6] *See Humphrey*, 482 P.3d at 1015; 4-ER-573:15-21 (rejecting Bonilla's request for own-recognizance release). They can request alternative conditions from the Superior Court or modification based on changed circumstances. But the Fourth Amendment does not compel the Sheriff to offer a different program or second-guess the Superior Court's decision to order compliance with Program conditions.

Moreover, especially as described by the Superior Court in the admonitions, the Sheriff's potential law enforcement sharing of participants' location information is not a distinct search from the GPS tracking. Sharing occurs consistent with the safeguards Plaintiffs identify from *Maryland v. King*, 569 U.S.

---

[6] To prevail, Plaintiffs must show *all* class members have this right. *See Haskell*, 745 F.3d at 1271.

435 (2013):[7] (1) limitations on when the Sheriff will share location information
without a warrant; (2) information limited to where participants are at a specific
time, not what they are doing or where they are when not on the PTEM Program;
and (3) safeguards against unauthorized use of the information in the Sheriff's
policy and associated location request form. 2-ER-121, 138. The other decisions
Plaintiffs cite also support the Sheriff. *See United States v. Wilson*, 13 F.4th 961,
972 (9th Cir. 2021) (involving government receiving new information, not sharing
existing information); *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2
F.4th 330, 341 (4th Cir. 2021) (addressing initial intrusion from tracking "'every
movement' of every person outside in Baltimore"); *United States v. Hammond*,
996 F.3d 374, 389 (7th Cir. 2021) (holding use of real-time cell site location data
not a search); *United States v. Hasbajrami*, 945 F.3d 641, 672 (2d Cir. 2019)
(declining to decide whether querying an NSA database of more than 250 million
emails annually collected in a dragnet fashion was a distinct search, while
suggesting that the FBI querying its smaller database of communications shared by
the NSA was not a distinct search).

　　　To try to demonstrate the expectation of privacy at issue, Plaintiffs rely on
two decisions in situations profoundly different than this one—involving location

---

[7] Not all safeguards *King* identifies are likely required. *See People v. Buza*,
413 P.3d 1132, 1146 (Cal. 2018) (suggesting *King* does not require expungement).

information of ordinary citizens, not pretrial releasees placed on an electronic monitoring program and admonished about potential sharing of their location information. *Carpenter v. United States*, 585 U.S. 296, 311 (2018); *United States v. Jones*, 565 U.S. 415 (2012).[8]

Lastly, Plaintiffs incorrectly minimize the importance of representation by counsel at release hearings. *See* Ans. Br. 42 & n.15; Op. Br. 41-42. In distinguishing decisions cited by the Sheriff, they incorrectly imply that defense counsel does not fully understand the challenged conditions. *See* 2-ER-179 (reflecting Superior Court consultation with Public Defender); 2-ER-68:3-16 (Simon hearing). In any event, these decisions do not depend on investigating defense counsel's knowledge. Rather, class members' representation by counsel, "barring an ineffective assistance claim, supports a conclusion that [their] waiver was informed and strategic." *United States v. Alcala*, 678 F.3d 574, 579 (7th Cir. 2012).

### 2. Strong Government Interests Favor Allowing Sharing of Location Information with Law Enforcement.

On the other side of the Fourth Amendment balance, strong government interests favor the Sheriff's ability to share PTEM Program participants' location

---

[8] Amici curie Electronic Frontier Foundation, *et al.*, similarly focus on the sensitivity of GPS location information for the public, which is irrelevant given that the Superior Court conditioned Plaintiffs' release on GPS monitoring. Amici argue against GPS monitoring, but that is a policy issue not before the Court.

with other law enforcement agencies where participants may be located. *See United States v. Hensley*, 469 U.S. 221, 232 (1985) (emphasizing the necessity of law enforcement agencies sharing information to respond to crimes; cited at Op. Br. 44 without response); Op. Br. 44-47 (discussing evidence). The injunction's limitation on law enforcement collaboration is "unprecedented." 4-ER-583 ¶ 11. PTEM Program participants including Barber live outside San Francisco, in other law enforcement agencies' jurisdiction. *See* 3-ER-455 ¶ 3; 4-ER-581-83 ¶ 10. Even within San Francisco, the Sheriff and Police Department have distinct responsibilities under the Charter, with the Police Department having responsibility for patrol and responding to crimes in progress. *See* S.F. Charter §§ 4.127, 6.105. And amici curie the California State Association of Counties, International Municipal Lawyers Association, and California State Sheriffs' Association describe the important government interests in allowing law enforcement sharing of location information. *See, e.g.*, CSAC & IMLA Amicus Br. viii-ix, 1-2, 7. Plaintiffs do not contest any of this.

Plaintiffs' only argument against the government interest is that requiring a warrant would not harm public safety. Ans. Br. 47-49. The record undermines that view. The examples in the record involved fast-moving events, and even the two including arrest warrants (the only ones acknowledged by Plaintiffs, *id.* at 48), required rapid law enforcement sharing of location information before the warrant

or during its execution. Lacking supporting evidence, Plaintiffs cite authorities that do not help them. *See Missouri v. McNeely*, 569 U.S. 141, 154 (2013) (addressing blood-alcohol testing of motorists and recognizing exigency exception will often apply); *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (describing exigency exception without suggesting it abrogates other exceptions); *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 661 (1995) (approving warrantless drug testing for student athletes without assessing whether warrants could be obtained); *Friedman v. Boucher*, 580 F.3d 847, 856 (9th Cir. 2009) (involving a search after a defendant was not detained or on supervision); Cal. Penal Code § 817(c) (not addressing public safety impact of warrant requirement); *People v. Alvarez*, 316 Cal. Rptr. 3d 705, 712 (Ct. App. 2023) (relating view of one officer in San Diego about time to get a warrant); *People v. Barbero*, 2022 WL 5358642, at \*8 (Cal. Ct. App. Oct. 6, 2022), *review denied* (Dec. 21, 2022) (affirming warrantless blood draw and addressing delays in connecting with a judge for a warrant).

In its amicus brief, the National Association of Criminal Defense Lawyers notably refrains from asserting any constitutional bar preventing federal law enforcement from sharing location information with other agencies engaged in criminal investigations. The organization therefore provides no basis to prohibit the Sheriff from this sharing. Nor does it correctly characterize the continuous nature

of federal pretrial GPS monitoring. *See Wiley*, --- F.4th at ---, 2024 WL 2745123, at *1.

Balancing participants' minimal reasonable expectation of privacy against the compelling governmental interests, the Sheriff should be permitted to share location data as ordered by the Superior Court and agreed to by Program participants.

### 3. Location Information Sharing is Independently Supported by a Special Needs Analysis.

Contrary to Plaintiffs' assertion, the record also supports the special needs underlying sharing of location information. *See* 4-ER-581 ¶ 6; 4-ER-583-84 ¶ 15. Simon is a good example, having been placed on the PTEM Program most recently as a component of mental health diversion he requested. 2-ER-67:6-68:2. Especially in that context, the Superior Court intended Program participation to "assure that the [mental health diversion] serves as a period of genuine rehabilitation and that the community [is] not harmed by [Simon's] being at large." *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987). While *Scott* declined to find that special needs justified a pretrial blanket drug testing condition, the case involved a search that was "*not* designed to ensure [the defendant's] appearance in court." 450 F.3d at 872, n.11. By contrast, Plaintiffs have not argued that sharing of location information with other law enforcement agencies is unrelated to legitimate purposes of the PTEM Program. Plaintiffs also rely on *United States v. Pool*, 621

F.3d 1213 (9th Cir. 2010), *vacated* 659 F.3d 761 (9th Cir. 2011) (en banc), even

though this Court vacated that decision based on mootness. In any event, *Pool* did

not decide whether the special needs test would be satisfied there and powerfully

supports the Sheriff as to the totality of the circumstances. *Id.* at 1218.

Meanwhile, contrary to Plaintiffs' arguments, the Sheriff did not waive the

special needs analysis but has consistently pursued it. D. Ct. ECF 31 at 17-18.

Plaintiffs acknowledged this in the district court, only now asserting waiver. *See*

D. Ct. ECF 39 at 9 ("Defendants next argue that Rules 5 and 13 are consistent with

the Fourth Amendment and article I, section 13 of the California Constitution,

under both 'totality of circumstances' balancing and the special needs doctrine.").

This Court should therefore uphold the ability of the Sheriff to voluntarily share

location information when necessary under a special needs analysis.

### C.    Plaintiffs Have Not Shown a Violation of the California Right to Privacy.

As the Opening Brief explains, Plaintiffs are unlikely to succeed on their

California privacy claim because their location information has been validly and

knowingly collected. Op. Br. 47-48. In response, Plaintiffs misrepresent the

Opening Brief and contend that the "privacy interest here is legally recognized."

Ans. Br. 51. They rely on inapposite cases to support this proposition. *See*

*Carpenter*, 585 U.S. at 319 (holding "a warrant is required in the rare case where

the suspect has a legitimate privacy interest in records held by a third party");

*Jones*, 565 U.S. at 402 (assessing whether surreptitiously attaching a GPS tracking device to a vehicle constitutes a Fourth Amendment search); *In re Google Location History Litigation*, 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021) (addressing claims against Google for secretly tracking and storing user location data without consent); *see also Goodman v. HTC Am., Inc.*, 2012 WL 2412070, at *14 (W.D. Wash. June 26, 2012) (addressing claims against phone manufacturer for surreptitious tracking of weather app user location). This case, by contrast, does not involve surreptitious tracking. It involves the tracking of individuals charged with serious criminal offenses who, while represented by counsel, knowingly and voluntarily agreed to the tracking and sharing of GPS information. By definition, Plaintiffs have not demonstrated an "objective entitlement founded on broadly based and widely accepted community norms" to non-sharing of their location information; they instead have "manifested by [their] conduct a voluntary consent." *Hill v. NCAA*, 865 P.2d 633, 648 (Cal. 1994) ("[T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy.").

Plaintiffs rely on other inapposite decisions involving location information of ordinary citizens, not pretrial releasees. Ans. Br. 51; *see Carpenter*, 585 U.S. at 311; *Jones*, 565 U.S. at 415. While Plaintiffs contend that their "privacy expectations are the same as the public," that is plainly incorrect. *York* rejected

"the flawed premise that a defendant who seeks OR release has the same reasonable expectation of privacy as that enjoyed by persons not charged with any crime." 892 P.2d at 813. Plaintiffs' argument ignores that courts have rejected privacy claims involving far more sensitive, permanently identifying information, such as the DNA samples in *People v. Buza*, 413 P.3d at 1152-53; *see also People v. McInnis*, 494 P.2d 690 (Cal. 1972) (same for mug shot). The Answering Brief minimizes these decisions as involving "personal information that could reveal only an individual's identity." Ans. Br. 53. But, as *Buza* explained, DNA information implicates "heightened privacy interests in the sensitive information that can be extracted from a person's DNA." 413 P.3d at 1152. If the private nature of DNA and longevity of mugshots do not support a privacy claim under California law, Plaintiffs do not explain why the historical location information here does so.

Plaintiffs mischaracterize the PTEM program as "the *misuse* of the collected information—i.e., the Sheriff's *indefinite and warrantless* sharing." Ans. Br. 53 (emphasis in original). But there is no misuse. The Superior Court gives certain criminal defendants the option for release subject to PTEM Program participation. 2-ER-169; 2-ER-181-82; 4-ER-554. They are advised on and agree in court to the PTEM Program conditions, including GPS tracking and that their location data may be shared. *Id.* It rings hollow for Plaintiffs to agree to participate in the PTEM Program to obtain release, agree in court to the program conditions, sue over those

conditions, mislabeling them as misuse of information, and insist on release without those conditions rather than remand into custody. Because Plaintiffs cannot satisfy the threshold elements for a privacy claim, there is no need to delve further into this claim. *Lewis v. Super. Ct.*, 397 P.3d 1011, 1018 (Cal. 2017). In any event, courts have rejected privacy claims in similar contexts, given the weighty government interests at issue. *Buza*, 413 P.3d at 1152-53; *see also Loder v. Mun. Ct.*, 553 P.2d 624, 630 (Cal. 1976).

## IV. Plaintiffs Have Not Demonstrated They Face Irreparable Harm.

Plaintiffs cannot meet their additional burden to establish irreparable harm. For the reasons above, Plaintiffs' constitutional claims are "too tenuous" to warrant injunctive relief. *Goldie's Bookstore, Inc. v. Super. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984). And equitable relief is not appropriate where the need for such relief is remote and speculative, "[e]specially where governmental action is involved." *Eccles v. Peoples Bank of Lakewood Vill.*, 333 U.S. 426, 431 (1948).

Nor can Plaintiffs rely solely on having raised constitutional claims. Ans. Br. 54-55. A party with a constitutional claim (First Amendment or otherwise) must still establish irreparable injury absent preliminary injunctive relief and show that the balance of hardships and public interest tip in its favor. *Klein v. City of San Clemente*, 584 F.3d 1196, 1207 (9th Cir. 2009); *Paramount Land Co. LP v. Cal. Pistachio Comm'n*, 491 F.3d 1003, 1012 (9th Cir. 2007) ("But simply raising a

serious [First Amendment] claim is not enough to tip the hardship scales."). To the extent the district court concluded that Plaintiffs validly alleged injuries like "vulnerability to harassment" or "further criminal legal system involvement," it cited no competent evidence supporting such speculative concerns, merely citing Plaintiffs' legal brief. 1-ER-48 (citing 4-ER-675). While Plaintiffs try to remedy that defect by pointing to their conclusory declarations, record evidence undermines any reasonable concern that individuals will be wrongly accused of committing a crime just because they are on electronic monitoring. 3-ER-456.

Further, Plaintiffs' Answering Brief does not argue—and therefore waives—any assertion that the legal remedies available to them are inadequate. *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (holding appellee waived argument by failing to raise it in answering brief). A party seeking preliminary injunctive relief must establish such inadequacy. *Stanley v. U.S.C.*, 13 F.3d 1313, 1320 (9th Cir. 1994); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."). Plaintiffs have a readily available legal remedy—seeking clarification or modification of their release conditions in the Superior Court handling their criminal cases. *See, e.g.*, 4-ER-560; 4-ER-562; 4-ER-564. In a similar procedural context, *In re Heincy*, 858 F.2d 548, 549 (9th 1988), reversed a bankruptcy court order enjoining a state court from

enforcing a criminal restitution order because the plaintiffs did not avail themselves of available legal remedies. Plaintiffs cannot establish irreparable harm because they could have raised their concerns about the PTEM Program conditions in the Superior Court, and, if necessary, the California Court of Appeal. *See, e.g.*, *In re Harris*, 287 Cal. Rptr. 3d 46, 53 (Ct. App. 2021); *see Littleton*, 414 U.S. at 502 (noting "available state and federal procedures which could provide relief from the wrongful conduct alleged").

Similarly, Plaintiffs fail to address that purported past exposure to illegal conduct does not "in itself show a present case or controversy regarding injunctive relief," absent continuing adverse effects. *Littleton*, 414 U.S. at 495-96. Any concern that Plaintiffs might suffer harassment, privacy intrusions, or further "criminal legal system involvement" presupposes that they will engage in activities calling for law enforcement involvement. But that does not constitute irreparable harm. Instead, courts assume litigants "will conduct their activities within the law and so avoid … exposure to the challenged course of conduct." *Littleton*, 414 U.S. at 497; *see City of Los Angeles v. Lyons*, 461 U.S. 95, 102-03 (1983).

## V. The Balance of the Equities and Public Interest Favor the Sheriff.

The balance of equities and public interest tip in favor of public safety and law enforcement concerns supporting the GPS location condition and sharing of information. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir.

2014) (balance of equities and public interest merge when government is a party).
"Public safety should be considered by a court when granting equitable relief."
*Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1404 (9th Cir. 1993). The district
court's conclusion that the equities and public interest favored Plaintiffs
disregarded the powerful countervailing considerations. The "public has a
compelling interest in promoting public safety." *Duncan v. Bonta*, 83 F.4th 803,
807 (9th Cir. 2023) (en banc).

Rehashing their argument on irreparable harm, Plaintiffs argue that the
public interest "always" favors preventing constitutional violations, Ans. Br. 57-
58, but that presupposes they succeed on their claims. Plaintiffs again assert that
public safety can be secured with a warrant requirement. Ans. Br. 58. That is also
incorrect. *See supra* at 21. Plaintiffs do not explain why a warrant *should be*
required when they agreed in court, while represented by counsel, to the location-
sharing condition.

## CONCLUSION

For the foregoing reasons and those in the Opening Brief, the Court should
vacate the district court's unprecedented, profoundly problematic injunction.

Dated:     June 7, 2024          Respectfully submitted,

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
JENNIFER E. CHOI
Chief Trial Deputy
ALEXANDER J. HOLTZMAN
JOSE A. ZELIDON-ZEPEDA
STEVEN F. EGLER
Deputy City Attorneys


By:_____*/s/ Alexander J. Holtzman*_____
          ALEXANDER J. HOLTZMAN
          Deputy City Attorney

Attorneys for Defendants-Appellants
CITY AND COUNTY OF SAN
FRANCISCO, PAUL MIYAMOTO, IN
HIS OFFICIAL CAPACITY AS SAN
FRANCISCO SHERIFF

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** <u>24-1025</u>

I am the attorney or self-represented party.

This brief contains <u>6,996</u> words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☒ complies with the word limit of Cir. R. 32-1.

☐ is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties;

☐ a party or parties are filing a single brief in response to multiple briefs; or

☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated _____.

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Signature <u>*/s/ Alexander J. Holtzman*</u>    Date <u>June 7, 2024</u>
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

## <u>CERTIFICATE OF SERVICE</u>

I, Annamarie Davis, hereby certify that I electronically filed the following document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF System on June 7, 2024.

### APPELLANTS' REPLY BRIEF
### (PRELIMINARY INJUNCTION APPEAL)

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed June 7, 2024, at San Francisco, California.

*/s/ Annamarie Davis*
ANNAMARIE DAVIS